UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TUDOR INSURANCE COMPANY | : |
| Plaintiff, | : No. 3:21-cv-876-VLB |
| v. | : |
| | : October 11, 2022 |
| RYAN'S PUB, LLC D/B/A RYAN'S PUB, ET AL. | : |
| Defendants. | : |

## MEMORANDUM OF DECISION GRANTING
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. 29]

This is an action for declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, brought by Tudor Insurance Company ("Tudor") against Ryan's Pub, LLC d/b/a Ryan's Pub ("Ryan's Pub"), Raymond L. Ryan (collectively with Ryan's Pub, the "Ryan Defendants"), Tammy De La Cruz as Administrator for the Estate of Joseph Gingerella (the "Estate"), and Tammy De La Cruz (collectively with the Estate, the "De La Cruz Defendants").[1] This is an insurance coverage dispute stemming from the shooting death of Joseph Gingeralla by Dante A. Hughes on the premises of Tudor's insured, Ryan's Pub, and the resulting lawsuit filed against Ryan's Pub and its Member-Manager Ryan (the "Underlying Action"). In that suit, which is presently pending in the Connecticut Superior Court, Gingerella's mother, De La Cruz, in her individual

---

[1] The Ryan Defendants and the De La Cruz Defendants are referred to collectively as "Defendants."

1

capacity and as the Administrator of the Estate, asserts claims of negligence/wrongful death, loss of consortium, and recklessness against the Ryan Defendants and seeks compensatory and punitive damages.  Tudor seeks an order declaring that any available coverage for the Underlying Action under the Policy is limited to the $300,000 limit set forth in the Policy's Assault & Battery Coverage Endorsement; and (2) that no coverage is available for any punitive damages awarded in the Underlying Action.

Tudor now moves for summary judgment on all claims.  [Mot., Dkt. 29].  Tudor argues an entitlement to judgment as a matter of law that its indemnity obligation for the Underlying Action under the Policy is limited to $300,000 because the Policy limits coverage for a bodily injury arising out of any one assault and/or battery incident to $300,000 and that the Underlying Action unequivocally arises out of an assault and/or battery.  In addition, Tudor argues an entitlement to judgment as a matter of law that there is no coverage under the Policy for any punitive damages awarded against the Ryan Defendants in the Underlying Action because the Policy unambiguously excludes coverage for any punitive and exemplary damages.

Defendants oppose the motion for summary judgment, [De La Cruz Opp., Dkt. 30; Ryan Opp., Dkt. 31], arguing that this action is premature, as liability has yet to be found on the part of the Ryan Defendants, and the basis for any such claim has yet to be determined.  Defendants argue the Court should decline to exercise jurisdiction, or alternatively, stay these proceedings.  Additionally, Defendants argue an assault or battery under the Policy requires intentional or

reckless conduct and there is a genuine issue of material fact as to the mental state of Hughes. Defendants concede Tudor does not have a duty to indemnify the Ryan Defendants for punitive damages, but reserve their right to seek punitive damages against Tudor should a court or jury determine Tudor unreasonably failed to settle the Underlying Action, or otherwise inappropriately exposed the Ryan Defendants to punitive damages.

For the reasons explained below, the Court GRANTS Tudor's motion for summary judgment on all counts.

I.  **LEGAL STANDARD**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of proving that no genuine factual disputes exist. *See Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (hereinafter, *Liberty Lobby*). "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought." *Vivenzio*, 611 F.3d 106 (citing to *Liberty Lobby*, 477 U.S. at 255; *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). This means that "although the court should review

the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).

## II. BACKGROUND

The following facts are taken from the Local Rule 56 statements of material facts and evidence cited by the parties. *See* D. Conn. L. Civ. R. 56.

### A. Related State Court Action

On December 11, 2016, Dante A. Hughes shot and killed Joseph Gingerella on the premises of Ryan's Pub. [De La Cruz's 56(a)2 ¶ 1, Dkt. 30]. On July 26, 2018, Hughes was convicted by a jury of first-degree manslaughter. [*Id.* ¶ 2].

Gingerella's mother, Tammy De La Cruz, filed suit in the Connecticut Superior Court against the Ryan Defendants for the wrongful death of Gingerella, both individually and as the Administrator of Gingerella's Estate. [*Id.* ¶ 3–4]. The Underlying Action is pending under the caption *Tammy De La Cruz Administrator Estate of Gingerella, et al. v. Ryan's Pub, LLC, et al.*, and docket number KNL-CV19-6038691-S. [*Id.* ¶ 4].

The following facts relating to Gingerella's death are alleged by Plaintiffs in their state court action. [Tudor's Ex. A]. On the night of his death, Gingerella was a patron at Ryan's Pub. [De La Cruz's 56(a)2 ¶ 7]. That night, Hughes arrived at Ryan's Pub with a Latoya Knight near "last call." [*Id.* ¶ 8]. Hughes and Knight began arguing, which resulted in Knight allegedly striking Hughes with her hand and slapping a beer out of Hughes's hand. [*Id.* ¶ 9]. Shortly after this altercation, Knight left the Pub and Hughes followed her outside. [*Id.* ¶ 10]. Rachel Smith, a

4

bartender and employee of Ryan's Pub, observed the altercation between Knight and Hughes. [*Id.* ¶ 11]. Smith approached Gingerella and asked him to go outside to check on Knight. [*Id.* ¶ 12]. Gingerella went outside with a fellow patron, John Hoyt. [*Id.* ¶ 13]. Hughes was striking Knight with his fists in the parking lot. [*Id.* ¶ 14]. Hoyt then attempted to pull Hughes away from Knight. [*Id.* ¶ 15]. Gingerella then stepped between Hughes and Hoyt to separate them, so Hoyt could assist Knight. [*Id.* ¶ 16]. Hughes then shot Gingerella in the torso and extremities. [*Id.* ¶ 17].

In their complaint in the Underlying Action, the Estate and De La Cruz (collectively, the "Plaintiffs") raise five counts against the Ryan Defendants. [*Id.* ¶ 5]. Counts One and Two allege negligence/wrongful death against Ryan's Pub and Ryan, respectively. [*Id.* ¶ 6]. In Counts One and Two, the Plaintiffs allege that Gingerella's injuries and damages were caused by the Ryan Defendants' carelessness and negligence in several respects, including in (a) failing to provide patrons with knowledgeable and sufficient staff capable of properly and adequately policing Ryan's Pub, despite knowing of previous violent incidents that had occurred on the premises; (b) failing to properly and adequately train Ryan's Pub's employees to manage unruly, violent and/or disruptive patrons; (c) failing to have adequate security personnel on the premises; and (d) failing to take reasonable and adequate measures to ensure the safety of the premises. [*Id.* ¶ 19]. Count Three incorporates the foregoing factual allegations and asserts a derivative claim for loss of parental consortium on behalf of De La Cruz individually. [*Id.* ¶ 20].

In Counts Four and Five, directed at Ryan's Pub and Ryan, respectively, Plaintiffs allege claims for recklessness. [*Id.* ¶ 21]. Specifically, the Plaintiffs allege that "[u]nder circumstances evincing an extreme indifference to human life Hughes recklessly engaged in conduct which created a grave risk of death to [Gingerella], and thereby caused his death, by firing multiple gunshots at [Gingerella], striking him in his torso and extremities." [*Id.* ¶ 22]. The Plaintiffs further allege that Gingerella's injuries and damages were caused by the reckless conduct of the Ryan Defendants, which created a grave risk of death to Gingerella. [*Id.* ¶ 23]. In their prayer for relief, the Plaintiffs seek compensatory damages, punitive damages, interest, and other equitable relief. [*Id.* ¶ 24].

B. <u>Tudor Insurance Policy</u>

Tudor issued Ryan's Pub a commercial lines policy number PGP0824006 for the period of September 23, 2016 to September 23, 2017 (the "Policy"). [*Id.* ¶ 25]. The Policy's Commercial General Liability ("CBL") Coverage Form SECTION 1 – COVERAGES provides in part:

> **COVERAGE A — BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply . . . .**

[*Id.* ¶ 26]. The parties agree that Ryan's Pub and Ryan qualify as Insureds under the foregoing definition. [*Id.* ¶ 28].

6

The Policy contains an Assault and Battery Exclusion Endorsement, which provides in relevant part:

> **This Endorsement Modifies Your Policy (Effective At Inception Unless Another Date Shown Below)**
>
> **This endorsement modifies such insurance as is afforded by the provisions of the policy related to the following:**
>
> > **Commercial General Liability Insurance — Coverage A and B**
> >
> > **Professional Liability Insurance — Coverage D**
> >
> > **Owners and Contractors' Protective Liability**
> >
> > **Sexual Molestation Liability — Coverage E**
> >
> > **Liquor Liability Coverage**
>
> **This insurance does not apply to any claim arising out of an assault and/or battery or out of any act or failure to act to prevent or suppress an assault and/or battery whether caused by the insured, an employee, a patron or any other person.**
>
> **This exclusion applies to all causes of action arising out of an assault and/or battery including, but not limited to, allegations of negligent hiring, placement, training, or supervision, or to any act, error, or omission relating to an assault and/or battery.**

[*Id.* ¶ 29].

The Policy also contains an Assault and/or Battery Coverage endorsement, which provides:

> **This endorsement modifies insurance provided under the following:**
>
> **COMMERCIAL GENERAL LIABILITY COVERAGE PART**
>
> **Schedule**

| Coverage G | | Limits of Insurance | |
|---|---|---|---|
| **$300,000 Each Occurrence** | | **$600,000 Coverage Aggregate** | |
| **Advance Premium** | **Premium Basis** | **Rate** | **Description of Operates** |
| **Included** | **Included** | **Included** | **Pub, Bar, Tavern or Restaurant** |

**A. COVERAGE G — ASSAULT AND/OR BATTERY LIABILITY is added to SECTION I — COVERAGES**

**1. Insuring Agreement**

**a. We will pay those sums the insured becomes legally obligated to pay as damages because of any assault and/or battery resulting in "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may at our discretion settle any claim or "suit" that may result.**

**But:**

**(1) The amount we will pay for damages is limited as described in the Schedule, LIMITS OF INSURANCE for COVERAGE G, as stated above; and**

**(2) Our right and duty to defend end when we have exhausted by payment the applicable limit of insurance in the payment of judgements or settlements under Coverage G.**

**No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.**

**b. This insurance applies to damages only if the assault and/or battery:**

**(1) Takes place in the "coverage territory";**

**(2) First occurs during the policy period.**

**c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily Injury".**

**\*\*\***

**B. SUPPLEMENTARY PAYMENTS - COVERAGES A. AND B. is amended to include COVERAGE G.**

**C. SECTION II - WHO IS AN INSURED applies to COVERAGE G.**

**D. SECTION III - LIMITS OF INSURANCE is amended with the following additions:**

8

> **Paragraph 2. Is amended to include damages under Coverage G.**
>
> **Subject to Paragraph 2., the Assault and/or Battery Each Occurrence Limit shown in the schedule of Coverage G is the most we will pay because of all "bodily injury" and "property damage" arising out of any one assault and/or battery incident.**
>
> **Subject to Paragraph 2., the Coverage G Aggregate Limit shown in the schedule of Coverage G is the most we will pay for all claims or "suits" for damages due to assault and/or battery.**
>
> **E. SECTION IV — COMMERCIAL GENERAL LIABILTY CONDITIONS applies to Coverage G.**
>
> **SECTION V — DEFINITIONS applies to Coverage**

[*Id.* ¶ 30].

The Policy includes a Punitive Damages Exclusion endorsement, which provides: "This insurance does not apply to any claim for punitive of exemplary damages."  [*Id.* ¶ 31].

Tudor is and has been providing the Ryan Defendants with a defense to the Underlying Action under the Policy, subject to reservation of rights.  [*Id.* ¶ 39].

### C. Declaratory Judgment Action

Tudor commenced this action for declaratory relief on June 25, 2021 (the "DJ Action").  [*Id.* ¶ 44].  In this case, Tudor seeks a declaration that its indemnity obligation under the Policy is limited to the $300,000 each occurrence limits of Coverage G – Assault and/or Battery Liability and there is no coverage under the Policy for any punitive damages awarded in the Underlying Action.  [*Id.* ¶ 45].

### III. DISCUSSION

#### A. Ripeness

Tudor argues that the only coverage under the Policy for the Underlying Action is under the Assault and/or Battery Coverage endorsement, which is subject

9

to a $300,000 each occurrence limit. Defendants argue it is premature to adjudicate Tudor's indemnity obligation because the Underlying Action has not been adjudicated.

Courts have "unique and substantial discretion in deciding whether to declare the rights of litigants" who seek relief under the Declaratory Judgment Act. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). The Supreme Court has "repeatedly characterized the Declaratory Judge Act as 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Id.* at 287. "Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking declaratory judgment before trial or after all argues have drawn to a close." *Id.* at 288.

"Generally, because a duty to indemnify is based on the 'facts established at trial and the theory under which judgment is actually entered in a case,' . . . it is often premature to issue a declaratory judgment as to the duty to indemnify before the basis for liability is established." *Pacific Employers Ins. Co. v. St. Francis Care Inc.*, 729 Fed. Appx. 129, 130 (2d Cir. 2018) (Summary Order) (internal citation omitted). Where "another suit is pending in a state court presenting the same issues . . . between the parties, it is entirely appropriate for a district court to dismiss a declaratory judgment action." *Westport Ins. Corp. v. Hamilton Wharton Group*, 483 Fed. Appx. 599, 604 (2d Cir. 2012) (Summary Order).

Defendants argue that "a declaratory judgment on the duty to indemnify is only appropriate when there is either no duty to defend or the underlying action

has been disposed," and here declaratory judgment is not appropriate because the Underlying Action has not been disposed.  [De La Cruz Opp. 7].  None of the cases cited by Defendant to support this proposition go so far as to say what Defendants argue.[2]  In addition, the legal authority relied upon by Defendants to support the proposition that adjudication of this action is premature involve cases where there is a common factual dispute in both the declaratory judgment action and the underlying action.  For example, in *Allstate Insurance Company v. Taratino*, two men were in the home of another, when one of the men shot a pellet from an air gun into the eye of the other.  No. 3:15-cv-62(SRU), 2016 WL 3546197, at *3 (D. Conn. June 23, 2016).  The shooter was sued for negligence and sought indemnification under his homeowners' insurance policy, which contained an exclusion for "intentional or criminal acts or omissions of an insured person."  *Id.* at *2.  The district court reserved ruling on the insurer's duty to indemnify "because the duty to indemnify in the present cases depends on the factual basis upon which judgment, if any, is rendered against [the insured] in the underlying state court case[ ] . . . ."  *Id.* at *4.  The factual issue in *Allstate Insurance Company* was whether the shooter acted intentionally or negligently, the former triggering exclusion and the latter triggering coverage.

Here, Defendants argue there is a common factual dispute in both this action and the Underlying Action, which is whether Hughes acted intentionally,

---

[2] To support this proposition, Defendants cite to two summary orders by the Second Circuit, which explicitly states that "RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT."  *See e.g., Pacific Employers Inc. Co.,* 729 Fed. Appx. 129.  Regardless, none of the summary orders cited support the proposition that declaratory judgment is *only* appropriate when there is either no duty to defend or the underlying action has been disposed.

recklessly, or negligently. Defendants argue that if Hughes acted negligently the Assault and/or Battery Coverage endorsement will not apply because assault and battery cannot be established through mere negligence. As detailed below, under Connecticut law, assault and battery in the civil context can be established through negligence. *See infra*. Meaning, even if the evidence in the Underlying Action establishes Hughes acted negligently, it will not affect the outcome of this action because Hughes's *mens rea* is irrelevant into whether there was an assault and/or battery triggering limited coverage under the Assault and/or Battery Coverage endorsement. Thus, there is no common factual dispute between this and the Underlying Action, unlike the cases relied upon by Defendants. Staying this case is inappropriate under these circumstances.

Therefore, the Court rejects Defendants' argument that adjudication of Tudor's motion for summary judgment is premature.

B. <u>Assault and/or Battery</u>

Next, the Court is to determine whether Tudor is entitled to summary judgment on Count One of its complaint, which seeks an order declaring that any available coverage under the Policy is limited to the $300,000 limits set forth in the Policy's Assault and/or Battery Coverage endorsement.

When a federal district court sits in diversity, it is to apply the conflict of laws rules of the forum state. *See e.g., Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496 (1941). Here, the forum state is Connecticut. Connecticut follows the Restatement (Second) of Conflict of Laws, specifically section 193 with respect to liability insurance contracts, such as the insurance policy at issue here, in

determining what body of law controls. *See American States, Ins. Co. v. Allied Ins. Co.*, 282 Conn. 454, 461–62, 922 A.2d 1043 (2007). Section 193 "establishes a special presumption in favor of application, in liability insurance coverage cases, of the law of the jurisdiction that is the principal location of the insured risk." *Id.* at 462. Here, though the parties do not discuss choice of law rules, the parties use Connecticut jurisprudence in advancing their positions. Thus, it is presumed from the pleadings, the parties do not dispute that Connecticut law governs interpretation of the Policy. The Court finds that the application of Connecticut law is appropriate as it is the local law of the jurisdiction where Ryan's Pub is (i.e., the location of the insured risk) and neither party presents any argument against the section 193 presumption. Therefore, the Court will apply Connecticut law to this matter.

"In ascertaining the substantive law of the forum, federal courts will look to the decisional law of the forum state, as well as to the state's constitution and statutes." *Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 119 (2d Cir. 1994) (citing to *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). "Where the substantive law of the forum state is uncertain or ambiguous, the job of the federal courts is carefully to predict how the highest court of the forum state would resolve the uncertainty or ambiguity." *Id.*

"[T]he proper construction of a policy of insurance presents a question of law." *QSP, Inc. Aetna Cas. And Sur. Co.*, 256 Conn. 343, 352, 773 A.2d 906, 914 (2011).

> An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract . . . . In accordance

13

>with those principles, [t]he determinative question is the intent of the parties, that is, what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy. . . . If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning. . . . Under those circumstances, the policy is to be given effect according to its terms. . . . When interpreting [an insurance policy], we must look at the contract as a whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result. . . .

*Jemiola Tr. of Edith R. Jemiola Living Tr. v. Hartford Cas. Ins. Co.*, 335 Conn. 117, 128–29, 229 A.3d 84, 91–92 (2019) (citing to *Lexington Ins. Co. v. Lexington Healthcare Group, Inc.*, 311 Conn. 29 37–38, 84 A.3d 1167 (2014)).

"The policy words must be accorded their natural and ordinary meaning . . . [and] any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy." *Travelers Ins. Co. v. Namerow*, 257 Conn. 812, 826–27, 778 A.2d 168, 177 (2001), *on reconsideration en banc,* 261 Conn. 784, 807 A.2d 467 (2002) (citing to *Hansen v. Ohio Casualty Ins. Co.,* 239 Conn. 537, 542–43, 687 A.2d 1262 (1996)). "This 'rule of construction favorable to the insured extends to exclusion clauses.'" *Id.* (citing to *Heyman Assocs. No. 1 v. Ins. Co. of Pennsylvania*, 231 Conn. 756, 770, 653 A.2d 122 (1995)). "The burden of proving that an exclusion applies is on the insurer, but the insured has the burden of proving that an exception to an exclusion reinstates coverage." *Capstone Bldg. Corp. v. Am. Motorists Ins. Co.,* 308 Conn. 760, 788 n.24, 67 A.3d 961, 982 (2013) (citing to *Buell Industries, Inc. v. Greater New York Mut. Ins. Co.*, 259 Conn. 527, 551, 791 A.2d 489 (2002)).

**Important to the Court's analysis of Tudor's entitlement to summary judgment on their claims for declaratory judgment is what is not in dispute. Here, the parties are not disputing that all of the claims in the Underlying Action stem from Hughes shooting and killing Gingerella at Ryan's Pub. The parties also do not dispute that the Policy excludes from general coverage "any claim arising out of an assault and/or battery," but provides limited coverage of up to $300,000 for each occurrence for "sums the insured becomes legally obligated to pay as damages because of any assault and/or battery." The dispute between the parties rests entirely on whether there is sufficient evidence in the record to establish an absence of genuine dispute of whether Hughes's shooting and killing Gingerella constitutes an "assault and/or battery" under the Policy. Tudor argues it does. Defendants argue it does not.**

**Under Connecticut law, "[a] civil assault is the intentional causing of imminent apprehension of harmful or offensive contact in another." *Maselli v. Reg'l Sch. Dist. No. 10*, 198 Conn. App. 643, 659, 235 A.3d 599, *cert. denied,* 335 Conn. 947, 238 A.3d 19 (2020). "An actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." *Id.* at 660.**

**Defendants argue that a genuine dispute of material fact remains of whether Hughes acted with the requisite *mens rea* to establish civil assault and/or battery, which they argue must be intentional or reckless. Defendants argue that the**

15

complaint in the Underlying Action is entirely silent as to Hughes's state of mind and the only proffered evidence on Hughes's state of mind is his criminal conviction, which they argue is inadmissible for that purpose. Tudor argues in response that an assault and battery under Connecticut law may be intentional, reckless, or negligent, and thus Hughes's state of mind is not a material fact. In addition, Tudor argues that even if Hughes's state of mind must be established as intentional or reckless, his conviction is admissible in establishing this fact.

Connecticut courts have routinely stated that "[a]n actionable assault and battery may be one committed wilfully or voluntarily, and therefore intentionally; one done under circumstances showing a reckless disregard of consequences; or *one committed negligently*." *Maselli*, 198 Conn. App. at 659, 235 A.3d 599 (citing to *Markey v. Santangelo*, 195 Conn. 76, 78, 485 A.2d 1305 (1985)) (emphasis added). *See also Alteriri v. Colasso*, 168 Conn. 329, 333, 362 A.2d 798 (1975); *Russo v. Porga*, 141 Conn. 709, 708–09, 109 A.2d 585 (1954); *Lentine v. McAvoy*, 105 Conn. 528, 531, 136 A.76 (1927); *Welch v. Durand*, 36 Conn. 182, 185, 4 Am. Rep. 55 (1869); *Morris v. Platt*, 32 Conn. 75 (1864); *Clinch v. Generali-U.S. Branch*, 110 Conn. App. 29, 40, 954 A.2d 223, 230 (2008), *aff'd,* 293 Conn. 774, 980 A.2d 313 (2009); *Perkins v. Hermitage Ins. Co.*, No. CV116006314S, 2013 WL 951373, at *9 (Conn. Super. Ct. Feb. 13, 2013). Defendants argue that this is merely dicta and "one is hard pressed to find such a case in modern jurisprudence actually imposing liability under such a theory, as opposed to under a simple negligence claim." [De La Cruz's Opp. 11]. Defendants further argue that the legal authority cited above rely on prior authority dating back to 1864 in *Morris v. Platt*, 32 Conn. 75, which involved a cause of action

for trespass. Defendants claim that the courts that have been citing to this standard from *Morris* have wrongfully assumed that if trespass to the person could be committed negligently, so could battery. Defendants argue that trespass, as applied in *Morris*, is not the same as battery.

However, contrary to Defendants' pleadings, Connecticut courts have cited to this proposition for more than mere dicta. For example, the Connecticut Appellate Court addressed this question in *Clinch v. Generali-U.S. Branch* in 2008, where the plaintiff, a restaurant patron, was involved in an altercation in the parking lot of the restaurant resulting in injuries. 110 Conn. App. at 32. The plaintiff sued the restaurant raising claims of negligence and willful, wanton, and reckless conduct. *Id.* The restaurant carried insurance policies, which contained exclusions for "assault and battery." *Id.* Like the Defendants here, the plaintiff in *Clinch* argued that the assault and battery exclusion did not apply to the underlying case because the complaint in the underlying action did not establish the requisite "intentional" conduct necessary for an assault and battery. *Id.* at 39. The appellate court rejected this argument for two reasons:

> First, '[i]n this state an actionable assault and battery may be one committed wilfully or voluntarily, and therefore intentionally; one done under circumstances showing a reckless disregard of consequences; or one committed negligently.' (Internal quotation marks omitted.) *Markey v. Santangelo,* 195 Conn. 76, 78, 485 A.2d 1305 (1985). Thus, intentional conduct is not required for an assault and battery. Second, our Supreme Court has held that a nearly identical assault and battery exclusion was not ambiguous and was intended to exclude all assaults and batteries from coverage. See *Kelly v. Figueiredo,* 223 Conn. 31, 37, 610 A.2d 1296 (1992). In examining the words of the exclusions at issue in this case and according the words of the policies' exclusions their natural and ordinary meaning, we conclude that, as in *Kelly,* it was the intent of the parties, the defendant and the insured, to exclude all assaults and batteries from coverage. Thus, we

17

> conclude that the assault and battery exclusions are not ambiguous and that, having already determined that the plaintiff's claims were ones alleging assault and battery, the exclusions are applicable to the plaintiff's claims.

*Id.* at 30–31. The Connecticut Supreme Court affirmed this conclusion in a per curiam decision, finding the appellate court's "opinion fully addresses all arguments raised in th[e] appeal" and the Connecticut Supreme Court "adopt[s] it as a proper statement of the issue and the applicable law concerning that issue." *Clinch v. Generali-U.S. Branch*, 293 Conn. 774, 777, 980 A.2d 313, 315 (2009).

This is not the kind of case where the Court needs to predict how the highest court of the forum would resolve uncertainty or ambiguity, *Travelers Ins. Co.*, 14 F.3d at 119, because the Connecticut Supreme Court has addressed this issue and has found clearly and repeatedly that assault and battery can be committed negligently. Thus, the Court rejects Defendants' argument that Hughes's mental state is a material fact of which a genuine dispute remains. As Defendants' remaining arguments as to why Tudor is not entitled to summary judgment on its first count hinge on the Court agreeing with them on their definition of assault and battery, the Court need not address Defendant's remaining arguments.

Therefore, the Court finds that Tudor is entitled to summary judgment on Count One of its complaint.

### C. <u>Punitive Damages</u>

Tudor argues that the Policy unambiguously bars coverage or punitive damages. Defendants concede this argument but reserves their rights pursuant to Connecticut General Statutes section 38a-321 "for the same should a court or jury determine that the plaintiff unreasonably failed to settle the Underlying Action or

otherwise inappropriately exposed the Ryan Defendants to punitive damages." Defendants do not argue that their reservation of rights impacts the Court's ability to grant the motion for summary judgment on Count Two.  The Court accepts Defendants' concession and notes their reservation of rights.

Therefore, the Court finds that Tudor is entitled to summary judgment on Count Two of its complaint.

## IV. CONCLUSION

For the above reasons, the Court grants Tudor's motion for summary judgment and enters the following orders:

1. Any available coverage under the Policy for the Underlying Action is limited to the $300,000 limits as set forth in the Policy's Assault and Battery Coverage Endorsement;

2. No coverage is available for any punitive damages awarded in the Underlying Action; and

3. The Clerk is directed to enter judgment in favor of Tudor and close this case. IT IS SO ORDERED.

                                                        /s/
                              Hon. Vanessa L. Bryant
                              United States District Judge

Dated this day in Hartford, Connecticut: October 11, 2022